**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

In re:

ORLANDO GATEWAY PARTNERS, LLC and NILHAN HOSPITALITY, LLC,

Debtor(s).
______________________________/

Case No. 6:15-bk-03448-KSJ

CHAPTER 11

ORLANDO GATEWAY PARTNERS, LLC and NILHAN HOSPITALITY, LLC,

Plaintiff(s),

vs.

GOOD GATEWAY, LLC and SEG GATEWAY, LLC,

Defendant(s)/ Third-party plaintiff(s)

vs.

ROHAN THAKKAR, an individual; NILOY THAKKAR, an individual; SALONI THAKKAR, an individual; NILOY INC., a Georgia corporation; NILHAN FINANCIAL, LLC, a Florida limited liability company; RNT, LLC, a Florida limited liability company; and SALONI THAKKAR, LLC, a Georgia limited liability company,

Third-party Defendant(s).
______________________________/

Adv. Pro. No. 6:15-ap-00084-KSJ

*(Substantively Consolidated)*

**SUPPLEMENTAL THIRD PARTY COMPLAINT FOR THE RECOVERY OF FRAUDULENT TRANSFERS**

Adversary Proceeding Claimants, Good Gateway, LLC (“Good Gateway”) and SEG Gateway, LLC (“SEG”) (collectively “Claimants”), by and through their undersigned attorneys, hereby commence further proceedings supplementary to execution in the above-styled matter,

pursuant to the provisions of § 56.29 and § 726.102(5) *Florida Statutes*, and sues Impleader Defendants Rohan Thakkar, Niloy Thakkar, Saloni Thakkar, Niloy, Inc., Nilhan Financial, LLC, RNT, LLC, and Saloni Thakkar, LLC (collectively "Impleader Defendants"). The grounds upon which this Supplemental Complaint is based are as follows:

## GENERAL ALLEGATIONS

### A. Background

1. This is an action seeking relief in proceedings supplementary to execution pursuant to § 56.29(5), (6)(b), and (9), *Florida Statutes*, pursuant to which this Court has jurisdiction and pursuant to which venue is proper as this supplemental action is ancillary to the original action. Further, Impleader Defendants are subject to jurisdiction pursuant to the Order of this Court dated August 27, 2015 (Doc. 56).

2. Impleader Defendant Rohan Thakkar ("R. Thakkar") is an individual residing at 400 Fifth Avenue #32E, New York, NY 10018 and is the son of Judgment Debtor Chittranjan K. Thakkar ("C. Thakkar").

3. Impleader Defendant Niloy Thakkar ("N. Thakkar") is an individual residing at 900 Biscayne Bay Apt. 2301 Miami, FL 33131 and is the son of Judgment Debtor C. Thakkar.

4. Impleader Defendant Saloni Thakkar ("S. Thakkar") is an individual residing in Miami-Dade County, Florida, and is the wife of Judgment Debtor C. Thakkar.

5. Impleader Defendant Niloy, Inc. ("NI") is a Georgia corporation with its principal place of business located in Norcross, Georgia.

6. Impleader Defendant Nilhan Financial, LLC ("NF") is a Florida limited liability company with its principal place of business located in Miami Dade County, Florida and is a mere continuation and successor of Nilhan Hospitality, LLC, the Georgia limited liability

company which is a Judgment Debtor in this action.

7. Impleader Defendant Saloni Thakkar, LLC ("STLC") is a Georgia limited liability company organized by C. Thakkar on June 16, 2000 with its principal place of business located in Norcross, Georgia.

8. Impleader Defendant N. Thakkar is a managing member of NF.

9. Impleader Defendant R. Thakkar is a managing member of NF.

10. Impleader Defendant RNT, LLC ("RNT"), is a Florida limited liability company, with its principal place of business located in Miami-Dade County, Florida.

11. Impleader Defendant the Niloy Thakkar 2012 Gift Trust, by and through its trustee Rohan Thakkar, is a trust established by Judgment Debtor C. Thakkar and his wife, Impleader Defendant Saloni Thakkar (the "Niloy Trust").

12. Impleader Defendant the Rohan Thakkar 2012 Gift Trust, by and through its trustee Niloy Thakkar, is a trust established by Judgment Debtor C. Thakkar and his wife, Impleader Defendant Saloni Thakkar (the "Rohan Trust").

13. On December 22, 2009, a complaint was filed in this lawsuit against the Defendants and Judgment Debtors in this action.

14. A jury trial was held in July 2014. On July 16, 2014, a unanimous jury returned a verdict in favor of the Claimants for $2,500,000.00 in favor of Good Gateway, LLC and $12,000,000.00 in favor of SEG Gateway, LLC.

15. On October 3, 2014, Claimants obtained Final Judgments and on January 29, 2015 Claimants obtained Amended Final Judgments against the Defendants and Judgment Debtors: Orlando Gateway Partners, LLC ("OGP"); Niloy & Rohan, LLC ("NRLLC"); Nilhan Hospitality, LLC ("Nilhan"); NCT Systems, Inc. ("NCT"); and Chittranjan K. Thakkar ("C.

Thakkar") (collectively the "Judgment Debtors") as follows:

a. Amended Final Judgment on Good Gateway, LLC's Second amended Complaint against Defendants C. Thakkar, OGP, Nilhan, NRLLC, and NCT in the amount of $2,500,000.00 (Claimants having reserved the right to supplement the amount of the final judgment to include attorneys' fees, costs, and interest);

b. Amended Final Judgment on SEG Gateway, LLC's Amended Crossclaim against Defendants C. Thakkar, Nilhan, and NCT in the amount of $12,000,000.00 (Claimants having reserved the right to supplement the amount of the final judgment to include attorneys' fees, costs, and interest); and

c. Amended Final Judgment on SEG Gateway, LLC's Amended Crossclaim against Defendants OGP and NRLLC in the amount of $15,376,435.58 ($12,000,000.00 plus pre-judgment interest) (Claimants having reserved the right to supplement the amount of the final judgment to include attorneys' fees, costs, and interest) (collectively, the "Judgments").

16. The Claimants hold unsatisfied writs of execution against all Judgment Debtors in this action, which writs remain valid and outstanding.

17. Claimants have received no satisfaction of the Judgments.

18. After the Judgments were entered, Judgment Lien Certificates were docketed with the Florida Secretary of State on October 7, 2014.

19. The Judgment Lien Certificates are valid and outstanding, but remain unsatisfied.

20. After the Judgments were entered by this Court, Claimants duly recorded them on October 7, 2014, in OR Bk 10815, Pages 9147 - 9158, in the Public Records for Orange County, Florida. A true and correct copy of the Final Judgment, as recorded, is attached hereto as **Exhibit A**.

21. Subsequent to the entry of the Judgments, Claimants attempted to enforce the Judgments against the Judgment Debtors, but to date has been unable to locate any assets of same upon which to execute.

22. Execution of the Judgments remains valid and outstanding, and Claimants are entitled to proceedings supplementary under § 56.29 of the *Florida Statutes*.

23. Contemporaneously with this Motion, Claimants have filed an Affidavit in compliance with § 56.29(1), *Fla. Stat.*

24. All conditions precedent to this action have been performed, waived, or frustrated by the Judgment Debtors.

25. Claimants have retained the undersigned attorneys to represent them in this matter and are obligated to pay them a reasonable fee.

26. Claimants are entitled to recover their reasonable attorneys' fees and costs incurred in collecting on the judgments against all Defendants pursuant to § 56.29 and § 57.115, *Fla. Stat*.

27. Claimants learned that the Judgment Debtors have made fraudulent transfers to the Impleader Defendants.

28. Contemporaneously with the filing of the Third Motion *Ex Parte* for Proceedings Supplementary, Claimants also filed a Motion for the Impleader of Third Parties.

29. Claimants' case is ripe in all respects.

**B. Fraudulent Transfer by NCT by Pledge of Its Assets**

30. Claimants have knowledge that NCT conveyed a security interest in substantially all of its assets for no value, and in such a manner that constitutes a fraudulent transfer.

31. On or about August 11, 2014, two months before entry of the Judgments,

Impleader Defendant NI filed that certain UCC-1 Financing Statement No. 201401979171 with the State of Florida Secured Transaction Registry (the "NCT UCC") indicating that Judgment Debtor NCT had pledged to NI substantially all its assets as more particularly described on the NCT UCC. A true and correct copy of the NCT UCC is attached hereto as **Exhibit B**.

32. The NCT UCC evidences a transfer of an interest in property of NCT, namely a security interest in substantially all of its assets, to Impleader Defendant NI (the "NCT Asset Transfer") for no consideration.

**C. Fraudulent Transfer by C. Thakkar of his Home to RNT, LLC**

33. Claimants have knowledge that C. Thakkar conveyed his interest in his home in South Carolina for no value, and in such a manner that constitutes a fraudulent transfer.

34. On or about August 5, 2014, two months before entry of the Judgments, C. Thakkar and S. Thakkar executed that certain Quitclaim Deed, which was recorded on September 5, 2014, in the Official Records of Greenwood County, South Carolina, Book 1429, Page 197 (the "Quit Claim Deed"). A true and correct copy of the Quit Claim Deed is attached hereto as **Exhibit C**.

35. The Quit Claim Deed evidences a transfer by C. Thakkar and S. Thakkar of all of their interest in their home in South Carolina, as further described in the Quit Claim Deed, to Impleader Defendant RNT (the "SC Home Transfer").

36. In fact, C. Thakkar and S. Thakkar formed RNT as a Florida limited liability company on August 5, 2014, the same date as the Quit Claim Deed. A true and correct copy of the Articles of Organization of RNT is attached hereto as **Exhibit D**.

37. The Quit Claim Deed evidences that only nominal amounts were paid in documentary stamp taxes, evidencing that no consideration was exchanged for the SC Home

Transfer.

**D. Fraudulent Transfers by C. Thakkar to N. Thakkar and R. Thakkar**

38. Claimants have knowledge that C. Thakkar forgave debts owed to him by his sons, Impleader Defendants R. Thakkar and N. Thakkar, and in such a manner that constitutes a fraudulent transfer.

39. On December 20, 2012, C. Thakkar sent a letter to R. Thakkar forgiving a debt of R. Thakkar to C. Thakkar of $2,720,849.63 (the "R. Thakkar Debt Letter"). A true and correct copy of the R. Thakkar Debt Letter is attached hereto as **Exhibit E**.

40. On December 20, 2012, C. Thakkar sent a letter to N. Thakkar forgiving a debt of N. Thakkar to C. Thakkar of $2,568,950.47 (the "N. Thakkar Debt Letter"). A true and correct copy of the N. Thakkar Debt Letter is attached hereto as **Exhibit F**.

41. C. Thakkar forgave the debt owed him by Impleader Defendants R. Thakkar and N. Thakkar, and, in essence, transferred his interest in that debt and Note to them for no consideration (the "Debt Forgiveness").

42. The Debtor Forgiveness by C. Thakkar, a Judgment Debtor, of the debt was done by C. Thakkar in collusion with N. Thakkar and R. Thakkar in order to hinder, delay, and defraud Claimants or other creditors.

43. The R. Thakkar Debt Letter and the N. Thakkar Debt Letter both indicate that payments on the obligations owed by R. Thakkar and N. Thakkar were to be made in Florida to C. Thakkar at his address.

**E. Fraudulent Transfer by C. Thakkar of His Interests in Niloy, Inc.**

44. Claimants have knowledge that C. Thakkar conveyed certain of his shares of NI to Impleader Defendants R. Thakkar and N. Thakkar, and in such a manner as would constitute a

fraudulent transfer.

45. On or about December 31, 2012, C. Thakkar executed that certain Share Transfer Power evidencing a transfer of 6 shares of Impleader Defendant NI to Impleader Defendant S. Thakkar (the "S. Thakkar Transfer Letter"). A copy of the S. Thakkar Transfer Letter is attached hereto as **Exhibit G**.

46. On or about December 31, 2012, C. Thakkar executed that certain Share Transfer Power evidencing a transfer of 16.6675 shares of Impleader Defendant NI to Impleader Defendant the Rohan Trust and a transfer of 16.6675 shares of Impleader Defendant NI to Impleader Defendant the Niloy Trust (the "Trust Transfer Letter"). A copy of the Trust Transfer Letter is attached in Exhibit G at p. 10.

47. The S. Thakkar Transfer Letter and the Trust Transfer Letter evidence the transfer by C. Thakkar of 39.335 shares of NI for no or inadequate consideration (the "Stock Transfer").

**F. Fraudulent Transfer by NCT of Funds to NI, NF and STLC**

48. Claimants have knowledge that NCT conveyed certain funds to Impleader Defendants NI, NF, and STLC in such a manner as would constitute fraudulent transfers.

49. On or about January 3, 2012, C. Thakkar transferred $1,500,000.00 to NI. A true and correct copy of this transfer from NCT's bank account is attached hereto as **Exhibit H**.

50. On or about August 8, 2014, C. Thakkar transferred $820,041.00 to STLC.

51. Also on August 8, 2014, C. Thakkar transferred $218,000.00 to NF.

52. On or about September 4, 2014, C. Thakkar transferred $29,000.00 to NF (collectively these four transfers are the "NCT Fund Transfers"). A true and correct copy of the STLC and NF transfers from C. Thakkar's U.S. Trust account are attached hereto as **Exhibit I**.

**G. Fraudulent Transfer Received by S. Thakkar for C. Thakkar's Wages**

53. Claimants have knowledge that C. Thakkar indirectly conveyed certain funds to Impleader Defendant S. Thakkar in such a manner as would constitute a fraudulent transfer.

54. C. Thakkar is currently employed by NI.

55. C. Thakkar currently provides services to and for NI.

56. C. Thakkar does not, however, directly accept wages or compensation for his services, although he did prior to the Judgments.

57. Instead, C. Thakkar orders NI to pay S. Thakkar the wages and other compensation actually due to him and formally paid to him (the "Disguised Wages Transfer").

58. The Disguised Wages Transfer constitutes a transfer of C. Thakkar's property to S. Thakkar for no or inadequate consideration.

**H. Fraudulent Transfer by Niloy and Rohan, LLC, by Pledge of Its Assets**

59. Claimants have knowledge that NRLLC conveyed a security interest in substantially all of its assets for no value, and in such a manner that constitutes a fraudulent transfer.

60. On October 3, 2014, hours after the entry of the Judgments, Impleader Defendants NI and NFI filed that certain UCC-1 Financing Statement No. 067-2014-006990 recorded with the Gwinnett County Clerk of the Superior Court State of Georgia Secured Transaction Registry (the "NRLLC UCC") on October 6, 2014 indicating that Judgment Debtor NRLLC had pledged to NI and NFI substantially all its assets as more particularly described on the NRLLC UCC. A true and correct copy of the NRLLC UCC is attached hereto as **Exhibit J**.

61. The NRLLC UCC evidences a transfer of an interest in property of NRLLC, namely a security interest in substantially all of its assets, to Impleader Defendants NI and NFI (the "NRLLC Asset Transfer") for no consideration.

62. Accordingly, the transfers and fraudulent transfers pursuant to § 726.105(1)(a), § 726.105(1)(b), and § 222.30 *Fla. Stat.* (2014) are subject to being avoided in order to satisfy the Judgments pursuant to § 56.29 and § 726.108(1)(a) *Fla. Stat.* (2014).

**COUNT I**

**(CONSTRUCTIVE FRAUD - NCT TRANSFERS)**

63. Paragraphs 1 through 62 are realleged and incorporated herein by reference.

64. This is an action to recover fraudulent transfers pursuant to § 726.106(1) and § 726.105(1)(b), § 222.30, § 56.29(5), and § 726.108(1)(a) *Florida Statutes* (2014).

65. § 56.29(5), *Fla. Stat.* (2014) provides, in pertinent part:

> The court may order any property of the judgment debtor, not exempt from execution, in the hands of any person, or any property, debt, or other obligation due to the judgment debtor, to be applied toward the satisfaction of the judgment debt. The court may entertain claims concerning the judgment debtor's assets brought under chapter 726 and enter any order or judgment, including a money judgment against any initial or subsequent transferee, in connection therewith, irrespective of whether the transferee has retained the property. Claims under chapter 726 are subject to the provisions of chapter 726 and applicable rules of civil procedure.

66. § 726.108(1)(a) *Fla. Stat.* (2014) provides, in pertinent part:

> In an action for relief against a transfer or obligation under §§ 726.101-726.112, a creditor, subject to the limitations in § 726.109 may obtain: (a) Avoidance of the transfer or obligation to the extent necessary to satisfy the creditor's claim …

67. § 222.30(2)-(3) Fla. Stat. (2014) provides, in pertinent part:

> (2) Any conversion by a debtor of an asset that results in the proceeds of the asset becoming exempt by law from the claims of a creditor of the debtor is a fraudulent asset conversion as to the creditor, whether the creditor's claim to the asset arose before or after the conversion of the asset, if the debtor made the conversion with the intent to hinder, delay, or defraud the creditor.
>
> (3) In an action for relief against a fraudulent asset conversion, a

> creditor may obtain:
>
> (a) Avoidance of the fraudulent asset conversion to the extent necessary to satisfy the creditor's claim.
>
> (b) An attachment or other provisional remedy against the asset converted in accordance with applicable law.
>
> (c) Subject to applicable principles of equity and in accordance with applicable rules of civil procedure:
>
> 1. An injunction against further conversion by the debtor of the asset or of other property.
> 2. Any other relief the circumstances may require.
>
> (4) If a creditor has obtained a judgment on a claim against the debtor, the creditor, if the court so orders, may levy execution on the asset converted or its proceeds.
>
> (5) A cause of action with respect to a fraudulent asset conversion is extinguished unless an action is brought within 4 years after the fraudulent asset conversion was made.
>
> (6) If an asset is converted and the converted asset is subsequently transferred to a third party, the provisions of chapter 726 apply to the transfer to the third party.

68. At a time when NCT was indebted to Claimants and other creditors, NCT caused the NCT Transfers to or for the benefit of NI.

69. At the time the NCT Transfers occurred, Claimants were the actual holder of a claim who would have standing to assert a claim for relief as defined in § 726.102, *Florida Statutes*.

70. The NCT Transfers occurred within four years of the bringing of this action.

71. NI did not receive reasonably equivalent value in exchange for the NCT Transfers.

72. NCT was insolvent on the date of the NCT Transfers, or became insolvent on account of the NCT Transfers, and remained insolvent continuously thereafter.

73. At the time of the NCT Transfers, NCT was generally not paying its debts as they became due.

74. At the time of the NCT Transfers, NCT was engaged in a business or transaction

for which the remaining property of NCT constituted an unreasonably small amount of capital in relation to the business or transaction.

75. At the time of the NCT Transfers, NCT intended to incur, believed or reasonably should have believed that it would incur, debts that would be beyond NCT's ability to pay as they became due.

76. The NCT Transfers are avoidable under § 726.108(1)(a), *Florida Statutes*.

WHEREFORE, Claimants respectfully request that this Court enter judgment against Impleader Defendant NI for any and all relief available, including, but not limited to any relief under § 726.108, *Florida Statutes*, as well as the following:

a. The entry of a money judgment against the NI for the value of the amounts transferred to the extent necessary to satisfy the claims of the Claimants;

b. An attachment, imposition of an equitable lien, or other provisional remedy against property of NI as transferees;

c. Avoidance of the NCT Transfers to the extent necessary to satisfy the claims of the Claimants;

d. The levying of execution upon the assets of NCT and the setting of an execution sale;

e. The award of all reasonable attorney's fees and costs against NCT incurred in the bringing of this action pursuant to *Florida Statutes* § 56.29(11) and § 57.115; and

f. Such other equitable relief as the Court may deem appropriate.

**COUNT II**

**(ACTUAL FRAUD - NCT TRANSFERS)**

77. Paragraphs 1 through 62 and all the paragraphs referenced above, are realleged

and incorporated herein by reference.

78. This is an action to recover fraudulent transfers pursuant to § 726.105(1)(a), *Florida Statutes*.

79. At a time when NCT was indebted to Claimants and other creditors, NCT caused the NCT Transfers to or for the benefit of NI, NF, and STLC.

80. At the time the NCT Transfers occurred, Claimants were the actual holder of a claim who would have standing to assert a claim for relief as defined in § 726.102, *Florida Statutes*.

81. The NCT Transfers occurred within four years of the bringing of this action.

82. The NCT Transfers from NCT to NI, NF, and STLC are fraudulent transfers and were made with the intent to hinder, delay, or defraud Claimants and/or other creditors, as evidenced by the following:

a. The Insider Transfers include the transfer to NI, NF, and STLC who are all insiders of NCT as defined in § 726.102, *Florida Statutes*;

b. C. Thakkar controls NCT and NI, NF, and STLC; therefore there was no real change in dominion and control of NCT's assets after the NCT Transfers;

c. The NCT Transfers were concealed from Claimants;

d. The required documentary stamp taxes were not paid for the Insider Transfers;

e. The Insider Transfers were made by quit claim deed, check, or other disbursement made with without warranties of title typically seen in legitimate transfers;

f. NCT was well aware of its debt to Claimants at the time of the NCT Transfers and had been threatened with suit by Claimants;

g. NCT had no independent income with which to pay its debt to Claimants;

h. NCT, upon information and belief, was a single asset real estate entity whose sole business was holding membership interest in the Judgment Debtor OGP;

i. No consideration was received by NI, NF or STlC for the NCT Transfers;

j. The NCT Transfers were transfers of interest in substantially all of the non-exempt assets of NCT;

k. The NCT Transfers occurred on January 3, 2012, August 8, 2014 and September 4, 2014, which include substantial debt; and

i. NCT knew or had reasonable cause to believe that the NCT Transfers would make it immediately insolvent, if it was not insolvent already.

83. The NCT Transfers are avoidable under § 726.108(1)(a), *Florida Statutes*.

WHEREFORE, Claimants respectfully request that this Court enter judgment against Impleader Defendant NI for any and all relief available, including, but not limited to any relief under § 726.108, *Florida Statutes*, as well as the following:

a. The entry of a money judgment against NI, NF, and STLC for the value of the amounts transferred to the extent necessary to satisfy the claims of the Claimants;

b. An attachment, imposition of an equitable lien, or other provisional remedy against the property of NI, NF, and STLC as transferees;

c. Avoidance of the NCT Transfers to the extent necessary to satisfy the claims of the Claimants;

d. The levying of execution upon the assets of NCT and the setting of an execution sale;

e. The award of all reasonable attorney's fees and costs against NCT

incurred in the bringing of this action pursuant to *Florida Statutes* § 56.29(11) and § 57.115; and

f. Such other equitable relief as the Court may deem appropriate.

**COUNT III**
**(CONSTRUCTIVE FRAUD - SC HOME TRANSFER)**

84. Paragraphs 1 through 62 and all paragraphs referenced above are realleged and incorporated herein by reference.

85. This is an action to recover fraudulent transfers pursuant to §§ 726.106(1) and 726.105(1)(b), *Florida Statutes*.

86. At a time when C. Thakkar was indebted to Claimants and other creditors, C. Thakkar caused the SC Home Transfer to or for the benefit of RNT.

87. At the time the SC Home Transfer occurred, Claimants were the actual holder of a claim who would have standing to assert a claim for relief as defined in § 726.102, *Florida Statutes*.

88. The SC Home Transfer occurred within four years of the bringing of this action.

89. RNT did not receive reasonably equivalent value in exchange for the SC Home Transfer.

90. C. Thakkar was insolvent on the date of the SC Home Transfer, or became insolvent on account of the SC Home Transfer, and remained insolvent continuously thereafter.

91. At the time of the SC Home Transfer, C. Thakkar was generally not paying its debts as they became due.

92. At the time of the SC Home Transfer, C. Thakkar was engaged in a business or transaction for which the remaining property of C. Thakkar constituted an unreasonably small amount of capital in relation to the business or transaction.

93. At the time of the SC Home Transfer, C. Thakkar intended to incur, believed or

reasonably should have believed that it would incur, debts that would be beyond C. Thakkar's ability to pay as they became due.

94. The SC Home Transfer is avoidable under § 726.108(1)(a), *Florida Statutes*.

WHEREFORE, Claimants respectfully request that this Court enter judgment against Impleader Defendant RNT for any and all relief available, including, but not limited to any relief under § 726.108, *Florida Statutes*, as well as the following:

a. The entry of a money judgment against RNT for the value of the amounts transferred to the extent necessary to satisfy the claims of the Claimants;

b. An attachment, imposition of an equitable lien, or other provisional remedy against property of RNT as transferees;

c. Avoidance of the SC Home Transfer to the extent necessary to satisfy the claims of the Claimants;

d. The levying of execution upon the assets of C. Thakkar and the setting of an execution sale;

e. The award of all reasonable attorney's fees and costs against C. Thakkar incurred in the bringing of this action pursuant to *Florida Statutes* § 56.29(11) and § 57.115; and

f. Such other equitable relief as the Court may deem appropriate.

**COUNT IV**
**(ACTUAL FRAUD - SC HOME TRANSFER)**

95. Paragraphs 1 through 62 and all paragraphs above are realleged and incorporated herein by reference.

96. This is an action to recover fraudulent transfers pursuant to § 726.105(1)(a), *Florida Statutes*.

97. At a time when C. Thakkar was indebted to Claimants and other creditors, C.

Thakkar caused the SC Home Transfer to or for the benefit of RNT.

98. At the time the SC Home Transfer occurred, Claimants were the actual holder of a claim who would have standing to assert a claim for relief as defined in § 726.102, *Florida Statutes*.

99. The SC Home Transfer occurred within four years of the bringing of this action.

100. The SC Home Transfer from C. Thakkar to RNT is a fraudulent transfer and was made with the intent to hinder, delay, or defraud Claimants and/or other creditors, as evidenced by the following:

a. The SC Home Transfer was a transfer to RNT, an insider of C. Thakkar as defined in § 726.102, *Florida Statutes*;

b. C. Thakkar controls RNT and therefore there was no real change in dominion and control of C. Thakkar 's assets after the SC Home Transfer;

c. The SC Home Transfer was concealed from Claimants;

d. The required documentary stamp taxes were not paid for the SC Home Transfer;

e. The SC Home Transfer was made by quit claim deed, made with without warranties of title typically seen in legitimate transfers;

f. C. Thakkar was well aware of his debt to Claimants at the time of the SC Home Transfer;

g. No consideration was received by RNT for the SC Home Transfer;

h. The SC Home Transfer occurred two months after entry of Judgment against and the Judgment was entered only two months prior to the SC Home Transfer, which is a substantial debt; and

i. C. Thakkar knew or had reasonable cause to believe that the SC Home Transfer would make him immediately insolvent, if it was not insolvent already.

101. The SC Home Transfer is avoidable under § 726.108(1)(a), *Florida Statutes*.

WHEREFORE, Claimants respectfully request that this Court enter judgment against Impleader Defendant RNT for any and all relief available, including, but not limited to any relief under § 726.108, *Florida Statutes*, as well as the following:

a. The entry of a money judgment against the RNT for the value of the amounts transferred to the extent necessary to satisfy the claims of the Claimants;

b. An attachment, imposition of an equitable lien, or other provisional remedy against property of RNT as transferees;

c. Avoidance of the SC Home Transfer to the extent necessary to satisfy the claims of the Claimants;

d. The levying of execution upon the assets of C. Thakkar and the setting of an execution sale;

e. The award of all reasonable attorney's fees and costs against C. Thakkar incurred in the bringing of this action pursuant to *Florida Statutes* § 56.29(11) and § 57.115; and

f. Such other equitable relief as the Court may deem appropriate.

**COUNT V**
**(CONSTRUCTIVE FRAUD - DEBT FORGIVENESS)**

102. Paragraphs 1 through 62 and all paragraphs referenced above are realleged and incorporated herein by reference.

103. This is an action to recover fraudulent transfers pursuant to § 726.106(1) and § 726.105(1)(b), *Florida Statutes*.

104. At a time when C. Thakkar was indebted to Claimants and other creditors, C.

Thakkar caused the Debt Forgiveness to or for the benefit of R. Thakkar and N. Thakkar.

105. At the time the Debt Forgiveness occurred, Claimants were the actual holder of a claim who would have standing to assert a claim for relief as defined in § 726.102, *Florida Statutes*.

106. The Debt Forgiveness occurred within four years of the bringing of this action.

107. C. Thakkar did not receive reasonably equivalent value in exchange for the Debt Forgiveness.

108. C. Thakkar was insolvent on the date of the Debt Forgiveness, or became insolvent on account of the Debt Forgiveness, and remained insolvent continuously thereafter.

109. At the time of the Debt Forgiveness, C. Thakkar was generally not paying his debts as they became due.

110. At the time of the Debt Forgiveness, C. Thakkar was engaged in a business or transaction for which the remaining property of C. Thakkar constituted an unreasonably small amount of capital in relation to the business or transaction.

111. At the time of the Debt Forgiveness, C. Thakkar intended to incur, believed or reasonably should have believed that it would incur, debts that would be beyond C. Thakkar's ability to pay as they became due.

112. The Debt Forgiveness is avoidable under § 726.108(1)(a), *Florida Statutes*.

WHEREFORE, Claimants respectfully request that this Court enter judgment against Impleader Defendants. R. Thakkar and N. Thakkar for any and all relief available, including, but not limited to any relief under § 726.108, *Florida Statutes*, as well as the following:

a. The entry of a money judgment against R. Thakkar and N. Thakkar for the value of the amounts transferred to the extent necessary to satisfy the claims of the Claimants;

b. An attachment, imposition of an equitable lien, or other provisional remedy against property of R. Thakkar and N. Thakkar as transferees;

c. Avoidance of the Debt Forgiveness to the extent necessary to satisfy the claims of the Claimants;

d. The levying of execution upon the assets of C. Thakkar and the setting of an execution sale;

e. The award of all reasonable attorney's fees and costs against C. Thakkar incurred in the bringing of this action pursuant to *Florida Statutes* § 56.29(11) and § 57.115; and

f. Such other equitable relief as the Court may deem appropriate.

**COUNT VI**
**(ACTUAL FRAUD - DEBT FORGIVENESS)**

113. Paragraphs 1 through 62 and all paragraphs referenced above are realleged and incorporated herein by reference.

114. This is an action to recover fraudulent transfers pursuant to § 726.105(1)(a), *Florida Statutes*.

115. At a time when C. Thakkar was indebted to Claimants and other creditors, C. Thakkar caused the Debt Forgiveness to or for the benefit of R. Thakkar and N. Thakkar.

116. At the time the Debt Forgiveness occurred, Claimants were the actual holder of a claim who would have standing to assert a claim for relief as defined in § 726.102, *Florida Statutes*.

117. The Debt Forgiveness occurred within four years of the bringing of this action.

118. The Debt Forgiveness from C. Thakkar to R. Thakkar and N. Thakkar is a fraudulent transfer and was made with the intent to hinder, delay, or defraud Claimants and/or other creditors, as evidenced by the following:

a. The Debt Forgiveness was a transfer to R. Thakkar and N. Thakkar, insiders of C. Thakkar as defined in § 726.102, *Florida Statutes*;

b. C. Thakkar is the father of R. Thakkar and N. Thakkar and therefore there was no real change in dominion and control of C. Thakkar's assets after the Debt Forgiveness;

c. The Debt Forgiveness was concealed from Claimants;

d. C. Thakkar was well aware of his debt to Claimants at the time of the Debt Forgiveness as this lawsuit was underway;

e. No consideration was received by C. Thakkar for the Debt Forgiveness;

f. The Debt Forgiveness occurred after Claimants filed suit against C. Thakkar, which is a substantial debt; and

g. C. Thakkar knew or had reasonable cause to believe that the Debt Forgiveness would make him immediately insolvent, if he was not insolvent already.

119. The Debt Forgiveness is avoidable under § 726.108(1)(a), *Florida Statutes*.

WHEREFORE, Claimants respectfully request that this Court enter judgment against Impleader Defendants R. Thakkar and N. Thakkar for any and all relief available, including, but not limited to any relief under § 726.108, *Florida Statutes*, as well as the following:

a. The entry of a money judgment against R. Thakkar and N. Thakkar for the value of the amounts transferred to the extent necessary to satisfy the claims of the Claimants;

b. An attachment, imposition of an equitable lien, or other provisional remedy against property of R. Thakkar and N. Thakkar as transferees;

c. Avoidance of the Debt Forgiveness to the extent necessary to satisfy the claims of the Claimants;

d. The levying of execution upon the assets of C. Thakkar and the setting of

an execution sale;

e. The award of all reasonable attorney's fees and costs against C. Thakkar incurred in the bringing of this action pursuant to *Florida Statutes* § 56.29(11) and § 57.115; and

f. Such other equitable relief as the Court may deem appropriate.

**COUNT VII**
**(CONSTRUCTIVE FRAUD - STOCK TRANSFER)**

120. Paragraphs 1 through 62 and all paragraphs above are realleged and incorporated herein by reference.

121. This is an action to recover fraudulent transfers pursuant to §§ 726.106(1) and 726.105(1)(b), *Florida Statutes*.

122. At a time when C. Thakkar was indebted to Claimants and other creditors, C. Thakkar caused the Stock Transfer to or for the benefit of R. Thakkar and N. Thakkar.

123. At the time the Stock Transfer occurred, Claimants were the actual holder of a claim who would have standing to assert a claim for relief as defined in § 726.102, *Florida Statutes*.

124. The Stock Transfer occurred within four years of the bringing of this action.

125. C. Thakkar did not receive reasonably equivalent value in exchange for the Stock Transfer.

126. C. Thakkar was insolvent on the date of the Stock Transfer, or became insolvent on account of the Stock Transfer, and remained insolvent continuously thereafter.

127. At the time of the Stock Transfer, C. Thakkar was generally not paying its debts as they became due.

128. At the time of the Stock Transfer, C. Thakkar was engaged in a business or transaction for which the remaining property of C. Thakkar constituted an unreasonably small

amount of capital in relation to the business or transaction.

129. At the time of the Stock Transfer, C. Thakkar intended to incur, believed or reasonably should have believed that it would incur, debts that would be beyond C. Thakkar's ability to pay as they became due.

130. The Stock Transfer is avoidable under § 726.108(1)(a), *Florida Statutes*.

WHEREFORE, Claimants respectfully request that this Court enter judgment against Impleader Defendants R. Thakkar and N. Thakkar for any and all relief available, including, but not limited to any relief under § 726.108, *Florida Statutes*, as well as the following:

a. The entry of a money judgment against R. Thakkar and N. Thakkar for the value of the amounts transferred to the extent necessary to satisfy the claims of the Claimants;

b. An attachment, imposition of an equitable lien, or other provisional remedy against property of R. Thakkar and N. Thakkar as transferees;

c. Avoidance of the Stock Transfer to the extent necessary to satisfy the claims of the Claimants;

d. The levying of execution upon the assets of C. Thakkar and the setting of an execution sale;

e. The award of all reasonable attorney's fees and costs against C. Thakkar incurred in the bringing of this action pursuant to *Florida Statutes* § 56.29(11) and § 57.115; and

f. Such other equitable relief as the Court may deem appropriate.

**COUNT VIII**
**(ACTUAL FRAUD - STOCK TRANSFER)**

131. Paragraphs 1 through 62 and all paragraphs above are realleged and incorporated herein by reference.

132. This is an action to recover fraudulent transfers pursuant to § 726.105(1)(a),

*Florida Statutes*.

133. At a time when C. Thakkar was indebted to Claimants and other creditors, C. Thakkar caused the Stock Transfer to or for the benefit of R. Thakkar and N. Thakkar.

134. At the time the Stock Transfer occurred, Claimants were the actual holder of a claim who would have standing to assert a claim for relief as defined in § 726.102, *Florida Statutes*.

135. The Stock Transfer occurred within four years of the bringing of this action.

136. The Stock Transfer from C. Thakkar to R. Thakkar and N. Thakkar is a fraudulent transfer and was made with the intent to hinder, delay, or defraud Claimants and/or other creditors, as evidenced by the following:

a. The Stock Transfer was a transfer to R. Thakkar and N. Thakkar, insiders of C. Thakkar as defined in § 726.102, *Florida Statutes*;

b. R. Thakkar and N. Thakkar are the sons of C. Thakkar and therefore there was no real change in dominion and control of C. Thakkar's assets after the Stock Transfer;

c. The Stock Transfer was concealed from Claimants;

d. C. Thakkar was well aware of his debt to Claimants at the time of the Stock Transfer as this lawsuit was underway;

e. No consideration was received by R. Thakkar and N. Thakkar for the Stock Transfer;

f. The Stock Transfer occurred after Claimants filed suit against C. Thakkar, which is a substantial debt; and

g. C. Thakkar knew or had reasonable cause to believe that the Stock Transfer would make him immediately insolvent, if he was not insolvent already.

137. The Stock Transfer is avoidable under § 726.108(1)(a), *Florida Statutes*.

WHEREFORE, Claimants respectfully request that this Court enter judgment against Impleader Defendanta R. Thakkar and N. Thakkar for any and all relief available, including, but not limited to any relief under § 726.108, *Florida Statutes*

, as well as the following:

a. The entry of a money judgment against R. Thakkar and N. Thakkar for the value of the amounts transferred to the extent necessary to satisfy the claims of the Claimants;

b. An attachment, imposition of an equitable lien, or other provisional remedy against property of R. Thakkar and N. Thakkar as transferees;

c. Avoidance of the Stock Transfer to the extent necessary to satisfy the claims of the Claimants;

d. The levying of execution upon the assets of C. Thakkar and the setting of an execution sale;

e. The award of all reasonable attorney's fees and costs against C. Thakkar incurred in the bringing of this action pursuant to *Florida Statute*s § 56.29(11) and § 57.115; and

f. Such other equitable relief as the Court may deem appropriate.

**COUNT IX**
**(CONSTRUCTIVE FRAUD - NCT FUND TRANSFERS)**

138. Paragraphs 1 through 62 and all paragraphs referenced above are realleged and incorporated herein by reference.

139. This is an action to recover fraudulent transfers pursuant to § 726.106(1) and § 726.105(1)(b), *Florida Statutes*.

140. At a time when NCT was indebted to Claimants and other creditors, NCT caused the NCT Fund Transfers to or for the benefit of NI, NF, and STLC.

141. At the time the NCT Fund Transfers occurred, Claimants were the actual holder of a claim who would have standing to assert a claim for relief as defined in § 726.102, *Florida Statutes*.

142. The NCT Fund Transfers occurred within four years of the bringing of this action.

143. NCT did not receive reasonably equivalent value in exchange for the NCT Fund Transfers.

144. NCT was insolvent on the date of the NCT Fund Transfers, or became insolvent on account of the NCT Fund Transfers, and remained insolvent continuously thereafter.

145. At the time of the NCT Fund Transfers, NCT was generally not paying its debts as they became due.

146. At the time of the NCT Fund Transfers, NCT was engaged in a business or transaction for which the remaining property of NCT constituted an unreasonably small amount of capital in relation to the business or transaction.

147. At the time of the NCT Fund Transfers, NCT intended to incur, believed or reasonably should have believed that it would incur, debts that would be beyond NCT's ability to pay as they became due.

148. The NCT Fund Transfers are avoidable under § 726.108(1)(a), *Florida Statutes*.

WHEREFORE, Claimants respectfully request that this Court enter judgment against Impleader Defendants NI, NF, and STLC for any and all relief available, including, but not limited to any relief under § 726.108, *Florida Statutes*, as well as the following:

a. The entry of a money judgment against NI, NF, and STLC for the value of the amounts transferred to the extent necessary to satisfy the claims of the Claimants;

b. An attachment, imposition of an equitable lien, or other provisional

remedy against property of NI, NF, and STLC as transferees;

c. Avoidance of the NCT Fund Transfers to the extent necessary to satisfy the claims of the Claimants;

d. The levying of execution upon the assets of NCT and the setting of an execution sale;

e. The award of all reasonable attorney's fees and costs against NCT incurred in the bringing of this action pursuant to *Florida Statutes* § 56.29(11) and § 57.115; and

f. Such other equitable relief as the Court may deem appropriate.

**COUNT X**
**(ACTUAL FRAUD - NCT FUND TRANSFERS)**

149. Paragraphs 1 through 62 and all paragraphs referenced above are realleged and incorporated herein by reference.

150. This is an action to recover fraudulent transfers pursuant to § 726.105(1)(a), *Florida Statutes*.

151. At a time when NCT was indebted to Claimants and other creditors, NCT caused the NCT Fund Transfers to or for the benefit of NI, NF and STLC.

152. At the time the NCT Fund Transfers occurred, Claimants were the actual holder of a claim who would have standing to assert a claim for relief as defined in § 726.102, *Florida Statutes*.

153. The NCT Fund Transfers occurred within four years of the bringing of this action.

154. The NCT Fund Transfers from NCT to NI, NF, and STLC are fraudulent transfers and were made with the intent to hinder, delay, or defraud Claimants and/or other creditors, as evidenced by the following:

a. The NCT Fund Transfers were transfers to NI, NF, and STLC all insiders

of NCT as defined in § 726.102, *Florida Statutes*;

b. C. Thakkar controls NCT and NI, NF, and STLC; therefore there was no real change in dominion and control of NCT's assets after the NCT Fund Transfers;

c. The NCT Fund Transfers were concealed from Claimants;

d. NCT was well aware of its debt to Claimants at the time of the NCT Fund Transfers as this lawsuit was already underway;

e. No consideration was received by NCT for the NCT Fund Transfers;

f. The NCT Fund Transfers occurred after Claimants filed suit against NCT, as well as after verdicts were entered for the Claimants, which include substantial debt; and

g. NCT knew or had reasonable cause to believe that the NCT Fund Transfers would make it immediately insolvent, if it was not insolvent already.

155. The NCT Fund Transfers are avoidable under § 726.108(1)(a), *Florida Statutes*.

WHEREFORE, Claimants respectfully request that this Court enter judgment against Impleader Defendants NI, NF, and STLC for any and all relief available, including, but not limited to any relief under § 726.108, *Florida Statutes*, as well as the following:

a. The entry of a money judgment against NI, NF, and STLC for the value of the amounts transferred to the extent necessary to satisfy the claims of the Claimants;

b. An attachment, imposition of an equitable lien, or other provisional remedy against the property of NI, NF, and STLC as transferees;

c. Avoidance of the NCT Fund Transfers to the extent necessary to satisfy the claims of the Claimants;

d. The levying of execution upon the assets of NCT and the setting of an execution sale;

e. The award of all reasonable attorney's fees and costs against NCT incurred in the bringing of this action pursuant to *Florida Statutes* § 56.29(11) and § 57.115; and

f. Such other equitable relief as the Court may deem appropriate.

**COUNT XI**
**(CONSTRUCTIVE FRAUD - DISGUISED WAGES TRANSFER)**

156. Paragraphs 1 through 62 and all paragraphs referenced above are realleged and incorporated herein by reference.

157. This is an action to recover fraudulent transfers pursuant to § 726.106(1), § 726.105(1)(b), and §222.30(2)-(3), *Florida Statutes* (2014).

158. At a time when C. Thakkar was indebted to Claimants and other creditors, C. Thakkar caused the Disguised Wages Transfer to or for the benefit of S. Thakkar.

159. At the time the Disguised Wages Transfer occurred, Claimants were the actual holder of a claim who would have standing to assert a claim for relief as defined in § 726.102, *Florida Statutes*.

160. The Disguised Wages Transfer occurred within four years of the bringing of this action.

161. C. Thakkar did not receive reasonably equivalent value in exchange for the Disguised Wages Transfer.

162. C. Thakkar was insolvent on the date of the Disguised Wages Transfer, or became insolvent on account of the Disguised Wages Transfer, and remained insolvent continuously thereafter.

163. At the time of the Disguised Wages Transfer, C. Thakkar was generally not paying his debts as they became due.

164. At the time of the Disguised Wages Transfer, C. Thakkar was engaged in a

business or transaction for which the remaining property of C. Thakkar constituted an unreasonably small amount of capital in relation to the business or transaction.

165. At the time of the Disguised Wages Transfer, C. Thakkar intended to incur, believed or reasonably should have believed that it would incur, debts that would be beyond C. Thakkar's ability to pay as they became due.

166. The Disguised Wages Transfer is avoidable under § 726.108(1)(a) and § 222.30(2)-(3), *Florida Statutes*.

WHEREFORE, Claimants respectfully request that this Court enter judgment against Impleader Defendant S. Thakkar for any and all relief available, including, but not limited to any relief under § 726.108, *Florida Statutes*, as well as the following:

a. The entry of a money judgment against S. Thakkar for the value of the amounts transferred to the extent necessary to satisfy the claims of the Claimants;

b. An attachment, imposition of an equitable lien, or other provisional remedy against property of S. Thakkar as transferee;

c. Avoidance of the Disguised Wages Transfer to the extent necessary to satisfy the claims of the Claimants;

d. The levying of execution upon the assets of C. Thakkar and the setting of an execution sale;

e. The award of all reasonable attorney's fees and costs against C. Thakkar incurred in the bringing of this action pursuant to *Florida Statutes* § 56.29(11) and § 57.115; and

f. Such other equitable relief as the Court may deem appropriate.

**COUNT XII**
**(ACTUAL FRAUD - DISGUISED WAGES TRANSFER)**

167. Paragraphs 1 through 62 and all paragraphs referenced above are realleged and

incorporated herein by reference.

168. This is an action to recover fraudulent transfers pursuant to § 726.105(1)(a) and § 222.30(2)-(3), *Florida Statutes*.

169. At a time when C. Thakkar was indebted to Claimants and other creditors, C. Thakkar caused the Disguised Wages Transfer to or for the benefit of S. Thakkar.

170. At the time the Disguised Wages Transfer occurred, Claimants were the actual holder of a claim who would have standing to assert a claim for relief as defined in § 726.102, *Florida Statutes*.

171. The Disguised Wages Transfer occurred within four years of the bringing of this action.

172. The Disguised Wages Transfer from C. Thakkar to S. Thakkar is a fraudulent transfer and was made with the intent to hinder, delay, or defraud Claimants and/or other creditors, as evidenced by the following:

a. The Disguised Wages Transfer was a transfer to S. Thakkar, an insider of C. Thakkar as defined in § 726.102, *Florida Statutes*;

b. S. Thakkar is the wife of C. Thakkar and therefore there was no real change in dominion and control of C. Thakkar's assets after the Disguised Wages Transfer;

c. The Disguised Wages Transfer was concealed from Claimants;

d. C. Thakkar was well aware of his debt to Claimants at the time of the Disguised Wages Transfer as this lawsuit was underway;

e. No consideration was received by C. Thakkar for the Disguised Wages Transfer;

f. The Disguised Wages Transfer occurred after Claimants filed suit against

C. Thakkar, which is a substantial debt; and

g. C. Thakkar knew or had reasonable cause to believe that the Disguised Wages Transfer would make him immediately insolvent, if he was not insolvent already.

173. The Disguised Wages Transfer is avoidable under § 726.108(1)(a) and § 222.30 (2)-(3) *Florida Statutes* (2014).

WHEREFORE, Claimants respectfully request that this Court enter judgment against Impleader Defendant S. Thakkar for any and all relief available, including, but not limited to any relief under § 726.108, *Florida Statutes*, as well as the following:

a. The entry of a money judgment against R. Thakkar and N. Thakkar for the value of the amounts transferred to the extent necessary to satisfy the claims of the Claimants;

b. An attachment, imposition of an equitable lien, or other provisional remedy against property of R. Thakkar and N. Thakkar as transferees;

c. Avoidance of the Stock Transfer to the extent necessary to satisfy the claims of the Claimants;

d. The levying of execution upon the assets of C. Thakkar and the setting of an execution sale;

e. The award of all reasonable attorney's fees and costs against C. Thakkar incurred in the bringing of this action pursuant to *Florida Statutes* § 56.29(11) and § 57.115; and

f. Such other equitable relief as the Court may deem appropriate.

Dated: September 16, 2015 Respectfully Submitted,

***s/ Clay M. Townsend***

Clay M. Townsend, Esq.
Florida Bar No. 363375
Keith R. Mitnik, Esq.
Florida Bar No. 436127
MORGAN & MORGAN, P.A.

20 North Orange Avenue, Suite 1500
Orlando, FL 32801-3432
Telephone: (407) 418-2075
Facsimile: (407) 245-3346
Email: ctownsend@forthepeople.com
kmitnik@forthepeople.com
*Co-Counsel for Good Gateway, LLC and SEG Gateway, LLC*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true copy of the foregoing was served via CM/ECF electronic notification on all Electronic Filing Users on the list to receive email notice/service for this case. I further certify that on this 16th, day of September, 2015, I caused a copy of the foregoing to be served via email, U.S. mail, and/or hand-delivery to:

Office of the U.S. Trustee - ORL
George C. Young Federal Building
400 West Washington Street, Suite 1100
Orlando, FL 32801

Timothy S. Laffredi
Office of the U.S. Trustee
400 W. Washington St., Suite 1100
Orlando, FL 32801

Kenneth D. (Chip) Herron, Jr.
Wolff Hill McFarlin & Herron P.A.
1851 West Colonial Drive
Orlando, FL 3280
kherron@whmh.com;
kmaples@whmh.com

Michael A. Tessitore
Moran Kidd Lyons & Johnson, P.A.
111 N. Orange Ave., Suite 900
Orlando, FL 32801
mtessitore@morankidd.com;
epolanco@morankidd.com

R. Scott Shuker, Esq.
Latham Shuker Eden & Beaudine LLP
111 North Magnolia Ave., Suite 1400
Orlando, FL 32801
rshuker@lseblaw.com;jocasio@lseblaw.com;
bknotice1@lseblaw.com

***/s/ Clay M. Townsend***

Clay M. Townsend (FBN: 363375)
MORGAN & MORGAN, P.A.
20 North Orange Avenue, Suite 1500
Orlando, FL 32801-3432
Telephone: (407) 418-2075
Facsimile: (407) 245-3346
Email: ctownsend@forthepeople.com