ORDERED.

Dated: April 29, 2016

_____
Karen S. Jennemann
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION
www.flmb.uscourts.gov

| | |
|---|---|
| In re ) <br> ) <br> ORLANDO GATEWAY PARTNERS, ) <br> LLC, ) <br> ) <br> Debtor. ) <br> ) | Case No. 6:15-bk-03448-KSJ <br> Chapter 7 |
| ORLANDO GATEWAY PARTNERS, ) <br> LLC, ) <br> ) <br> Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> GOOD GATEWAY, LLC, *et al.*, ) <br> ) <br> Defendants. ) <br> ) | Adversary No. 6:15-ap-00084-KSJ |

**MEMORANDUM OPINION**
**AWARDING ATTORNEYS' FEES AS SANCTIONS**

In this removed adversary proceeding, Plaintiffs, Good Gateway, LLC and SEG Gateway, LLC,[1] seek attorneys' fees and costs arising from five state court orders awarding sanctions for

---

[1] The Court will refer to Good Gateway, LLC and SEG Gateway, LLC as "Plaintiffs" for the purpose of this opinion.

discovery and litigation abuses. I now need to determine the *amount* of attorney fees and costs Defendants[2] should pay for their misconduct during the discovery phase of the parties' litigation; whether Nilhan Financial and Debtor, Orlando Gateway Partners, are liable for the entire award; and whether the liability is joint and several between the Defendants.

### *The State Court Litigation and Sanction Orders*

The parties have engaged in aggressive litigation[3] in state court for years relating to the ownership and development of valuable real property located near the Orlando airport commonly called the "Orlando Gateway Project." The litigation resulted in jury verdicts totaling $14.5 million entered in favor of Plaintiffs—Good Gateway and SEG Gateway—and against all Defendants, except Nilhan Financial.

Two of the Defendants, Orlando Gateway Partners and Nilhan Hospitality, later filed bankruptcy cases.[4] Debtors then removed the state court litigation to this Court *before* the trial court could assess damages for the numerous discovery abuses identified in many sanctions orders entered during the parties' litigation. All non-debtor Defendants consented to jurisdiction and resolution of this issue by this Court.

Plaintiffs now seek the determination of the amount of awardable sanctions, primarily attorneys' fees and costs, arising from five of these sanctions orders.[5] Three of the orders relate to discovery abuses the trial court independently observed during the state court litigation—the

---

[2] Defendants subject to the state court sanction orders include: Debtors: Orlando Gateway Partners, LLC and Nilhan Hospitality, LLC, and non-debtors: Chittranjan K. Thakkar, Niloy & Rohan LLC, Nilhan Financial, LLC, NCT Systems, Inc., and Niloy, Inc., doing business as DCT Systems, Inc. (collectively, the "Defendants"). Other parties were named defendants in the state court litigation but are not liable under the relevant state court sanction orders.
[3] *Good Gateway, LLC, v. Orlando Gateway Partners, LLC, et al.*, Case No. 2010-CA-015315-O in the Circuit Court for the Ninth Judicial Circuit in Orange County, Florida.
[4] Case Nos. 6:15-bk-3447-KSJ and 6:15-bk-3448-KSJ. The Chapter 11 cases were filed on April 20, 2015. Both cases were converted to Chapter 7 liquidation cases on February 10, 2016. Doc. No. 174.
[5] During the two day trial held before the Bankruptcy Court on October 8 and 13, 2015, Plaintiffs withdrew their request for the determination of sanctions arising from the other state court sanction orders. Doc. Nos. 115 and 123. The parties submitted post-trial memoranda of law. Doc. Nos. 124, 125, 126, and 127.

Fourth Motion to Compel Order,[6] the Fifth Motion to Compel Order,[7] and the Omnibus Fraud Order.[8] The remaining two orders relate to discovery abuses connected with an earlier bankruptcy case[9] filed by Orlando Gateway Partners—the Case Management Order[10] and the 57.105 Order.[11]

The trial court obviously was frustrated at the Defendants lack of responsiveness to the Plaintiffs' discovery requests. The state court orders granting the Plaintiffs' Fourth and Fifth Motions to Compel merely directed the Defendants jointly and severally to produce the requested documents and to pay the Plaintiffs' costs, attorneys' fees and interest, relying on Florida Rule of Civil Procedure 1.380(a)(4)[12] and 1.380(b)(2).[13]

The Omnibus Fraud Order went a step further, incorporating all previous orders compelling discovery and imposing sanctions. The trial court made specific factual findings that "Plaintiff has proven by clear and convincing evidence that Mr. Thakkar [the primary individual defendant] willfully concealed NCT's [another Defendant's] involvement initially and … misrepresented his role in Nilhan Hospitality. … [and this conduct drove] up the time and cost of this litigation exponentially."[14] The order then imposed sanctions directing Defendants to "bear the cost,

---

[6] Exhibit D-003(C).
[7] Exhibit D-003(I).
[8] Exhibits D-003(K)(1)-(2).
[9] Case No. 13-bk-7056-KSJ, filed on June 5, 2013. The case was dismissed on September 5, 2013 (Doc. No. 100), and the parties returned to state court to continue their litigation.
[10] Exhibit D-003(D).
[11] Exhibit D-003(E).
[12] "If the motion [compelling discovery] is granted and after opportunity for hearing, the court shall require the party or deponent whose conduct necessitated the motion or the party or counsel advising the conduct to pay to the moving party the reasonable expenses incurred in obtaining the order that may include attorneys' fees, unless the court finds that the movant failed to certify in the motion that a good faith effort was made to obtain the discovery without court action, that the opposition to the motion was substantially justified, or that other circumstances make an award of expenses unjust."
[13] "If a party or an officer, director, or managing agent of a party or a person designated under rule 1.310(b)(6) or 1.320(a) to testify on behalf of a party fails to obey an order to provide or permit discovery, including an order made under subdivision (a) of this rule or rule 1.360, the court in which the action is pending may make any of the following orders: … Instead of any of the foregoing orders or in addition to them, the court shall require the party failing to obey the order to pay the reasonable expenses caused by the failure, which may include attorneys' fees, unless the court finds that the failure was substantially justified or that other circumstances make an award of expenses unjust."
[14] Doc. No. 63-15, ¶¶ 3(c)-(i).

including attorney's fees, of third party discovery necessitated by the failure to produce documents as ordered and the cost, including attorneys' fees, of depositions that required continuation because documents previously requested were not produced timely."[15]

The remaining two sanction orders, both entered the same day,[16] involve the assertion by the non-debtor Defendants[17] that they were entitled to the protection of the automatic stay that arose when Orlando Gateway Partners, LLC filed its earlier bankruptcy case in 2013. The trial court found the non-debtor Defendants (other than Orlando Gateway Partners, LLC[18]) improperly claimed the stay applied to them to delay discovery scheduled in the state court litigation;[19] violated the state court's Case Management Order; and, under Florida Statutes § 57.105,[20] should pay Plaintiffs' costs for rescheduling the depositions, for filing their motions to compel, and for sanctions.[21] "Section 57.105 generally 'provides the basis for sanctions against parties and counsel

---

[15] Doc. No. 63-15, ¶ 3(k).
[16] October 3, 2013.
[17] "The Plaintiffs' Motion for Sanctions . . . is [granted] as to the [Co-Defendants] (i.e. Nilhan Hospitality, LLC, Niloy & Rohan, LLC, Nilhan Financial, LLC, Chittranjan K. Thakkar, NCT Systems, Inc., and Niloy, Inc. [doing business as] DCT Systems." Exhibit D-003(E), ¶ 35(a).
[18] Orlando Gateway Partners, LLC is not liable for these sanctions because it had filed bankruptcy and was entitled to rely on the automatic stay to stop discovery against it in the state court litigation.
[19] For example, the non-debtor Defendants refused without reason to appear at six scheduled depositions and an evidentiary hearing. Exhibit D-003(D), P. 8.
[20] The state court order references two sections of Fla. Stat. § 57.105. Section (1) provides "[u]pon the court's initiative or motion of any party, the court shall award a reasonable attorney's fee, including prejudgment interest, to be paid to the prevailing party in equal amounts by the losing party and the losing party's attorney on any claim or defense at any time during a civil proceeding or action in which the court finds that the losing party or the losing party's attorney knew or should have known that a claim or defense when initially presented to the court or at any time before trial: (a) Was not supported by the material facts necessary to establish the claim or defense; or (b) Would not be supported by the application of then-existing law to those material facts." Section (2) provides "[a]t any time in any civil proceeding or action in which the moving party proves by a preponderance of the evidence that any action taken by the opposing party, including, but not limited to, the filing of any pleading or part thereof, the assertion of or response to any discovery demand, the assertion of any claim or defense, or the response to any request by any other party, was taken primarily for the purpose of unreasonable delay, the court shall award damages to the moving party for its reasonable expenses incurred in obtaining the order, which may include attorney's fees, and other loss resulting from the improper delay."
[21] Exhibit D-003(D), ¶¶ 35(b)-(c).

who assert frivolous claims or defenses or pursue litigation for the purpose of unreasonable delay.'"[22]

All of these discovery abuses occurred before the state court years ago. But, the trial court never assessed the amount of damage caused by the Defendants' discovery misconduct. With the substantial judgments now entered against the Defendants, the filing of these bankruptcy cases, and the removal of the remnants of the state court litigation to the Bankruptcy Court in 2015, the unenviable task I now face is to decide how much and which Defendants must pay the Plaintiffs for their sanctionable conduct. As part of this analysis, this Court must determine: (1) how many hours were reasonably expended in connection with the state court orders, (2) the reasonable attorney and paralegal hourly billing rate, (3) the amount of allowable costs, (4) the appropriate interest rate and when it accrues, (4) if a fee multiplier or other global sanction applies, (5) individual Defendants' liability for the sanctions, and (5) if the Defendants are jointly and severally responsible for payment of the sanctions.

### *Lodestar Analysis*

The applicable standard to determine allowable attorneys' fees and costs was articulated by the Florida Supreme Court in their oft followed decision:

> In determining the hourly rate, the number of hours reasonably expended, and the appropriateness of the reduction or enhancement factors, the trial court must set forth specific findings. If the court decides to adjust the lodestar, it must state the grounds on which it justifies the enhancement or reduction. In summary, in computing an attorney fee, the trial judge should (1) determine the number of hours reasonably expended on the litigation; (2) determine the reasonable hourly rate for this type of litigation; (3) multiply the result of (1) and (2); and, when appropriate, (4) adjust the fee on the basis of the contingent nature of the litigation or the failure to prevail on a claim or claims.[23]

---

[22] *Pino v. Bank of N.Y.*, 121 So. 3d 23, 41 (Fla. 2013) (quoting *Bionetics Corp. v. Kenniasty*, 69 So. 3d 943, 944 (Fla. 2011)).

[23] *Fla. Patient's Comp. Fund v. Rowe*, 472 So. 2d 1145, 1151-52 (Fla. 1985) holding modified by *Standard Guar. Ins. Co. v. Quanstrom*, 555 So. 2d 828 (Fla. 1990).

This is the so called lodestar approach.[24] "When deciding if the rate and hours requested are reasonable, Florida courts take a number of factors into consideration. Which factors the court will consider depends on the legislative or judicial purpose of the fee-authorizing provision."[25] The factors outlined in *Rowe* are set forth in Florida's Code of Professional Responsibility[26] and include:

> (1) The time and labor required, the novelty and difficulty of the question involved, and the skill requisite to perform the legal service properly. (2) The likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer. (3) The fee customarily charged in the locality for similar legal services. (4) The amount involved and the results obtained. (5) The time limitations imposed by the client or by the circumstances. (6) The nature and length of the professional relationship with the client. (7) The experience, reputation, and ability of the lawyer or lawyers performing the services. (8) Whether the fee is fixed or contingent.[27]

The Florida Supreme Court slightly modified the lodestar analysis in *Standard Guaranty Insurance Co. v. Quanstrom* explaining different cases require different criteria to assess the reasonableness of an attorney fee, particularly when a fee multiplier is sought.[28] The Florida Supreme Court in *Quanstrom* reaffirmed the use of the lodestar approach "as the basic starting

---

[24] *Brook v. JP Morgan Chase Bank, N.A. (In re Burdett)*, No. 8:09-AP-00390-KRM, 2015 WL 150848, at *2 (Bankr. M.D. Fla. Jan. 12, 2015) ("Florida courts accept the federal lodestar approach as the starting point for determining a reasonable fee award."). *See also Searcy, Denney, Scarola, Barnhart & Shipley, P.A. v. Poletz*, 652 So. 2d 366, 368 (Fla. 1995) ("In *Rowe*, we adopted the 'lodestar' method to establish a fair and reasonable attorney fee in those cases where the fee will be paid by someone other than the client who received the services. Under this approach the court must first determine the number of hours reasonably expended in providing the service. Next, the court must determine a reasonable hourly rate for the services rendered. In establishing the hourly rate, the court must take into account all the factors for determining a reasonable fee set forth in the Code of Professional Responsibility, except the 'time and labor required,' 'the novelty and difficulty of the question involved,' which will be considered in setting the number of hours reasonably expended, the 'results obtained,' and 'whether the fee is fixed or contingent.' The lodestar figure is produced by multiplying the number of hours reasonably expended by the reasonable hourly rate. Because a reasonable hourly rate is determined based on the assumption that the attorney will be paid regardless of result, the contingency risk 'multiplier' was created to compensate attorneys for those cases where there was a risk of nonpayment. The *Rowe* approach was intended to result in 'a uniform objective basis for the award of attorney's fees in situations where the payor has no part in the fee arrangement.') (internal citations omitted).
[25] *In re Burdett*, 2015 WL 150848, at *2.
[26] *Hiscox Dedicated Corp. Member, Ltd. v. Matrix Grp. Ltd., Inc.*, No. 8:09-CV-2465-T-33AEP, 2012 WL 2226441, at *3 (M.D. Fla. June 15, 2012) (When determining the lodestar, "the Court will consider [certain] factors, enumerated in *Rowe* and set forth in The Florida Bar Code of Professional Responsibility.").
[27] *Rowe*, 472 So. 2d at 1150.
[28] 555 So. 2d at 833-35.

point" but noted that "the use of the contingency fee multiplier should be modified" depending on what type of case the fee award is connected.[29]

Here, Plaintiffs seek sanctions for repeated discovery abuses by the Defendants. "It is well settled that determining whether sanctions should be imposed for discovery violations and the amount or nature of those sanctions are matters committed to the discretion of the trial court, and the trial court's decision will not be disturbed upon appeal absent an abuse of that discretion."[30] Additionally, the requirement that a trial court make findings regarding the number of hours reasonably expended and the reasonable hourly rate "also applies to fees awarded as a discovery sanction."[31]

### *Reasonable Hours Expended*

The first step in the lodestar analysis then is to determine the number of hours Plaintiffs' counsel reasonably expended stopping the Defendants' from thwarting their discovery efforts.[32] Of course, the parties disagree over the hours expended by Plaintiffs' counsel.

The biggest problem facing the Court in determining a reasonable number of hours is that Plaintiffs' lawyers failed to keep reliable or contemporaneous time records, even after the state court granted their various requests for sanctions. Plaintiffs' own exhibits are reconstructed, almost imaginary, time records. Plaintiffs further submitted numerous contradictory exhibits and then repeatedly amended those exhibits making them even more confusing. Plaintiffs' attorneys

---

[29] *Id.*
[30] *Channel Components, Inc. v. Am. II Elecs., Inc.*, 915 So. 2d 1278, 1284 (Fla. 2d Dist. Ct. App. 2005) (internal citations omitted); *See also Effective Teleservices, Inc. v. Smith*, 132 So. 3d 335, 341 (Fla. 4th Dist. Ct. App. 2014) ("We will uphold a trial court's award of attorneys' fees so long as it is supported by substantial, competent evidence.")
[31] *Trovato v. Trovato*, 16 So. 3d 290, 291 (Fla. 4th Dist. Ct. App. 2009) (citing *Tutor Time Merger Corp. v. MeCabe*, 763 So. 2d 505, 506 (Fla. 4th Dist. Ct. App. 2000)).
[32] *Rowe*, 472 So. 2d at 1150.

testified at trial, trying to explain their work.[33] Expert testimony also was unhelpful.[34] After spending many hours of review, I have concluded they are nearly impossible to parse. The one certainty is that the Plaintiffs did a poor job of demonstrating the number of hours they spent on pursuing discovery in response to the Defendants' sanctionable conduct versus those hours they spent on uncompensable general litigation tasks. Yet, Plaintiffs remain entitled to substantial compensation for the reasonable hours their attorneys spent getting the discovery hoarded that was refused by the Defendants.

Other courts have faced similar difficulties in assessing reasonable lawyer hours spent on a task. In each case, the court did the best job possible with the information provided.

> [T]ime "reasonably expended" by counsel means the time that ordinarily would be spent by lawyers in the community to resolve this particular type of dispute. *It is not necessarily the number of hours actually expended in the case.* Accordingly, [a] trial court [is] not limited by the amount reflected in the attorney's affidavit. It [is] allowed to consider other factors in determining a reasonable fee.[35]

"Florida courts have emphasized the importance of keeping accurate and current records of work done and time spent on a case, particularly when someone other than the client may pay the fee."[36] "To accurately assess the labor involved, the attorney fee applicant should present records detailing the amount of work performed. … Inadequate documentation may result in a reduction in the number of hours claimed, as will a claim for hours that the court finds to be excessive or

---

[33] Clay Townsend and Keith Mitnik—the attorneys for Plaintiffs in state court—both testified at trial.
[34] Plaintiffs' expert, Dennis O'Connor, and Clay Townsend, Plaintiffs' lawyer, testified about the reconstruction of the time records. Mr. Townsend's firm uses a program called "Client Profiles." According to O'Connor, every piece of paper that comes through in connection with the litigation is downloaded and put into the program to produce a spreadsheet. The expert then looked at the spreadsheet to determine the amount warranted for the completion of certain tasks. However, O'Connor testified that he came to a conclusion on the amount of hours reasonably expended in connection with the State Court orders **before** he even saw the spreadsheet produced by the Plaintiffs.
[35] *Levine v. Keaster*, 862 So. 2d 876, 882 (Fla. 4th Dist. Ct. App. 2003) (emphasis supplied).
[36] *Rowe*, 472 So. 2d at 1150.

unnecessary."[37] Florida does not require contemporaneous time records to justify a fee award but the reconstruction of time records must be more than "'wild guesses.'"[38]

In determining the reasonable hours expended by Plaintiffs' counsel in connection with the sanctions orders, the Court eliminated any hours more properly classified as general litigation tasks not compensable under the five sanction orders. I also eliminated any patently unreasonable requests.[39] Here are just a few illustrative examples:

- A "block billing" entry spanning from 7/23/12 – 11/01/12 for 25 hours.[40]

- Multiple time entries for reviewing bankruptcy court documents, attending bankruptcy hearings, and conferring with bankruptcy counsel that were properly required by Orlando Gateway Partners, LLC's bankruptcy but are not compensable under the sanctions orders.[41]

- Overlapping or duplicate entries on multiple days in the "supplemental time sheets." For example:

    o 5/17/13 on Exhibit D-003(F)(1) records 4 hours for a deposition, travel, and reviewing additional discovery documents. 5/17/13 on Exhibit D-010(a)(1) records 10 hours for the same deposition and reviewing the same documents. Which is it: 4, 10, or 14 hours?

    o 5/31/13 on Exhibit D-003(F)(1) records 7 hours for a deposition, travel, and reviewing documents. 5/31/13 on Exhibit D-010(A)(1) records 15 hours for document review. Which is it: 7, 15, or 22 hours?

---

[37] *Id.*
[38] *Trumbull Ins. Co. v. Wolentarski*, 2 So. 3d 1050, 1056 (Fla. 3d Dist. Ct. App. 2009) (quoting *Brake v. Murphy*, 736 So. 2d 745, 747 (Fla. 3d Dist. Ct. App. 1999)); *See also Badillo v. Playboy Entm't Grp., Inc.*, 302 F. App'x 901, 904 (11th Cir. 2008) ("Florida imposes no absolute requirement that contemporaneous records be maintained.").
[39] "That is not to say that the Court finds that any of the hours invoiced were not actually spent or that counsel's time was not, in their estimation, necessary to achieve the results they obtained on behalf of their client. … The question, for purposes of taxing fees and costs … is what time was reasonable and necessary, when the responsibility for those fees is shifted to the opposing party." *N.Y. Life Ins. Co. v. Waxenberg*, No. 807-CV-401-T-27TGW, 2009 WL 5214986, at n. 4 (M.D. Fla. Dec. 29, 2009).
[40] "[B]lock billing … made it impossible to determine the reasonableness of the hours expended on several matters." *Moore v. Kelso-Moore*, 152 So. 3d 681, 682 (Fla. 4th Dist. Ct. App. 2014).
[41] Exhibit D-003(D) provides "Co-defendants are hereby sanctioned for the Plaintiffs' costs of litigating the OGP Bankruptcy petition *to the extent it relates to* the cancellation of discovery, the filing of Plaintiffs' Motion to Compel, and Plaintiff's Motion for Sanctions." (emphasis supplied). The state court clearly limited sanctions to work necessitated by the non-debtor Defendants actions improperly claiming the protection of the automatic stay, not to general work required by the Debtor's bankruptcy itself.

- An entry for 30 hours in one day on 10/31/13. An entry for 30 hours in one day on 11/05/13. An entry for 32 hours in one day on 12/03/13. An entry for 28 hours in one day on 12/12/13. An entry for 24 hours in one day on 05/07/14.[42]

- Overlapping, duplicative, and unnecessary efforts by the Plaintiffs' attorneys in reviewing discovery and attending hearings for the fraud on the court motion. For example, on June 27, 2014, Mr. Mitnik recorded 14 hours to: "Prepare for and attend final evidentiary hearing on the Pltfs' motion for sanctions for Defs' fraud on the court." Mr. Townsend recorded 6 hours with the same exact description.[43] On May 22, 2014, these two experienced and able attorneys both recorded 12.5 and 13 hours for preparing and attending the same evidentiary hearing.[44] The hearing itself took approximately 3.5 hours.[45]

- Time entries for reviewing documents related to another party's (not OGP's) bankruptcy recorded under the Omnibus Fraud Order time sheets.[46] No explanation is offered why this time is compensable.

*All* of the relevant factors outlined in *Rowe* were considered by this Court including the skill and labor required to engage in meaningful discovery, the amount of time needed to draft motions to compel or for sanctions, and the time required to prepare for an evidentiary hearing. Ambiguities were resolved in favor of Plaintiffs' counsel. As an aside, Defendants' argument that the time sheets are inadequate because they are not separated between "Good Capital" and "Good Gateway/SEG Gateway" is rejected because the state court already had consolidated the two separate cases for the purposes of discovery before the Defendants contemptuous conduct commenced. It is irrelevant whether the attorneys spent time in one versus the other case given the consolidation.

After carefully reading each motion, order, and the state court's hearing transcripts on the motions and orders, then assessing the time records submitted in light of the factors outlined in

---

[42] *Id.* Plaintiffs' justification for these time entries is that the hours were actually put in over the course of several days but just recorded on the last day. Accepting that justification as true, the Court finds, similarly to the block billing entry, it is unable to determine the reasonableness of the hours spent on multiple matters over the course of several days.
[43] Exhibit D-010(A)(4).
[44] *Id.*
[45] Exhibit D-026.
[46] Exhibit D-010(A)(4).

*Rowe*, the Court finds that the reasonable hours spent rebuffing the Defendants' refusal to supply discovery and comply with the trial court orders are:

- Fourth Motion to Compel Order: 94.3 attorney hours, 55.5 paralegal hours;
- Fifth Motion to Compel Order: 137 attorney hours, 41.4 paralegal hours;
- Omnibus Fraud Order: 149.3 attorney hours, 14 paralegal hours;
- CMO Violation Order: 33 attorney hours, 13.5 paralegal hours; and
- 57.105 Order: 49 attorney hours, 0 paralegal hours.

### *Reasonable Hourly Rate*

The next step in the lodestar analysis is determining the reasonable hourly rate of the attorneys and paralegals. Of course, the parties again dispute these rates.

The party who seeks fees carries the burden of establishing the prevailing "'market rate,' i.e., the rate charged in that community by lawyers of reasonably comparable skill, experience and reputation, for similar services."[47] The Fourth District Court of Appeal noted "'[e]vidence of rates may be adduced through direct evidence of charges by lawyers under similar circumstances or by opinion evidence. … 'Perhaps the strongest and best evidence of an attorney's market rate is the hourly rate he/she charges clients.'"[48] The Fourth District Court of Appeal also cited the Eleventh Circuit Court of Appeals for the proposition that "'a reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation."[49]

---

[47] *Rowe*, 472 So. 2d at 1151.
[48] *Jomar Props., L.L.C. v. Bayview Const. Corp.*, 154 So. 3d 515, 518 (Fla. 4th Dist. Ct. App. 2015) (internal citations omitted).
[49] *Smith v. School Bd. of Palm Beach Cnty.*, 981 So. 2d 6 (Fla. 4th Dist. Ct. App. 2007) (quoting *Norman v. Hous. Auth. of City of Montgomery*, 836 F.2d 1292 (11th Cir. 1988)) (under federal law).

Plaintiffs' expert[50] testified that $575 an hour was a reasonable attorney rate. Defendants' expert testified $400 an hour was a reasonable attorney rate. Plaintiffs' counsel sought $400 per hour in their billing records. The Court finds that $400 per hour is a reasonable hourly rate for the services rendered in this case and is reflective of the prevailing market rate for lawyers in the community with comparable skills, experience, and reputation.

No formal expert testimony was presented that $125 was the proper hourly rate for paralegal time. Defendants did not contest this hourly rate in pleadings filed with the state court. At trial, however, Defendants argued the Court cannot assess paralegal time because of the lack of expert testimony.[51] Although formal expert testimony on this point is preferred,[52] in this case, the Court finds Mr. Townsend's testimony on his firm's billing practices of charging $125 per hour for paralegal work and the expert affidavits submitted in conjunction with his testimony is sufficient to conclude that $125 per hour is a reasonable paralegal rate.[53]

### *Calculation of Award*

The number of hours reasonably expended multiplied by the reasonable rate for each order is as follows:

- Fourth Motion to Compel Order: 94.3 Attorney Hours x $400 = $37,720 and 55.5 Paralegal Hours x $125 = $6,937.50;

- Fifth Motion to Compel Order: 137 Attorney Hours x $400 = $54,800, and 41.4 Paralegal Hours x $125 = $5,175;

---

[50] Dennis O'Connor testified as an expert for the Plaintiffs. David Canella testified as an expert for the Defendants. The Court will consider Mr. Cannella's testimony despite Plaintiffs' argument in its post-trial brief that the testimony should be stricken or given no weight. The Court overruled this objection at trial and likewise overrules the post-trial objection.
[51] Doc. No. 127.
[52] *Sea World of Fla., Inc. v. Ace Am. Ins. Cos., Inc.*, 28 So. 3d 158, 160 (Fla. 5th Dist. Ct. App. 2010).
[53] *Effective Teleservices, Inc.*, 132 So. 3d at 341-42 ("This does not require, however, that every attorney who performed work on the case personally appear at the fee hearing. Here, the supervising attorneys testified at the fee hearing. They had personal knowledge of the work performed by the non-testifying attorneys and staff and of their billing practices. We see no error in this regard.") (internal citations omitted).

- Omnibus Fraud Order: 149.3 Attorney Hours x $400 = $59,720, and 14 Paralegal Hours x $125 = $1,750;

- CMO Violation Order: 33 Attorney Hours x $400 = $13,200, and 13.5 Paralegal Hours x $125 = $1,687.50; and

- 57.105 Order: 49 Attorney Hours x $400 = $19,600

The total amount of the sanction is $200,590 ($185,040 in attorneys' fees and $15,550 in paralegal fees without interest).

### *Costs*

Plaintiffs seek substantial costs arguably incurred in connection with their frustrated discovery efforts against the Defendants. "The taxation of costs in any particular proceeding is within the broad discretion of the trial court. The trial court should exercise that discretion in a manner that is consistent with the policy of reducing the overall costs of litigation and of keeping such costs as low as justice will permit."[54] Additionally, "it is the burden of the moving party to show that all requested costs were reasonably necessary."[55]

Plaintiffs have failed to meet their burden to show that any cost was reasonably necessary or connected in any way with the sanctions orders. Plaintiffs admitted two exhibits related to costs: Exhibit D-010(A)(3) for the 57.105 Order and Exhibit D-010(A)(5) for the four other sanction orders. Exhibit D-010(A)(5) contains a general list of the costs with the date each cost was incurred but includes absolutely no detail as to the purpose of the cost, how it related to the underlying litigation, or whether there was any connection between the charge and any particular sanction order. There are *no* descriptions of what each cost represents, only a number. This makes it

---

[54] *In re Amendments to Unif. Guidelines for Taxation of Costs*, 915 So. 2d 612, 614 (Fla. 2005).
[55] *Id. See also Nasser v. Nasser*, 975 So. 2d 531, 532 (Fla. 4th Dist. Ct. App. 2008) ("It is the moving party's burden to show that the requested costs were reasonably necessary to defend the case at the time the action precipitating the cost was taken. During the hearing on the motion for attorney's fees and costs, it does not appear that there was ever any inquiry into whether the requested costs were reasonably necessary to defend the case at the time the action precipitating the cost was taken.") (internal citations omitted).

impossible for the Court to determine if these costs were reasonably necessary or whether they related to a sanction order.

The other exhibit, Exhibit D-10(A)(3), arguably lists costs incurred in connection with the 57.105 Motion. Florida law, however, provides that costs associated with a motion asserted under Florida Statute § 57.105 are not recoverable.[56]

As such, no costs are awarded to the Plaintiffs. They failed to demonstrate the purpose of the charges, the connection of the charges to the sanctions orders, and why any award under the 57.105 Motion is merited.

### *No Fee Multiplier or Global Sanction is Merited*

Having reached a lodestar number of $200,950, the next step is to determine whether a fee multiplier or global sanction is merited. Again, the parties disagree.

Plaintiffs' fee expert suggested a fee multiplier of 2.0; Defendants' expert suggested no fee multiplier. Applying a fee multiplier is discretionary with the trial court.[57] "There is a 'strong presumption' that the lodestar is sufficient to attract competent counsel, and the party seeking the multiplier has the burden of identifying a factor that the lodestar does not take into account adequately and proving with specificity that the enhancement is warranted."[58] Here, no fee multiplier is merited.[59] Nor is a discretionary global sanction requested in the Plaintiffs' brief to

---

[56] *See Pronman v. Styles*, 163 So. 3d 535, 538 (Fla. 4th Dist. Ct. App. 2015) ("[S]ection 57.105 does not provide a mechanism for recovering costs."); *Ferdie v. Isaacson*, 8 So. 3d 1246, 1251 (Fla. 4th Dist. Ct. App. 2009) (Section 57.105 "makes no mention of costs"); *Berman & Feldman v. Winn Dixie, Inc.*, 684 So. 2d 320, 323 (Fla. 4th Dist. Ct. App. 1996) ("[S]ection 57.105 does not provide for the imposition of costs against the losing party's attorney.").
[57] *State Farm Fire & Cas. Co. v. Palma*, 629 So. 2d 830, 833 (Fla. 1993) (citing *Quanstrom*, 555 So. 2d at 831).
[58] *Hiscox*, 2012 WL 2226441, at *9 (citing *Perdue v. Kenny*, 559 U.S. 542, 546, 130 S. Ct. 1662, 1669, 176 L.Ed.2d 494 (2010)).
[59] The Court likens the sanctions here to the sanctions awarded in *Sarkis v. Allstate Ins. Co.*, 863 So. 2d 210 (Fla. 2003). In *Sarkis*, the Court held that the use of a fee multiplier in awarding fees under Florida's offer of judgment statute is error. *Id.* at 218. "It is self-evident that attorney fees awarded as a sanction under [the offer of judgment statute] are awarded after an attorney has already been obtained and agreed to undertake the case, and thus the use of a multiplier is not consistent with the purpose of the fee-authorizing statute." *Id.* at 222-23.

the state court[60] but not argued at trial appropriate.  No justification for such a sanction was credibly demonstrated.

### *Interest Rate Calculation*

At last we reach two issues the parties do not dispute—the applicable interest rate of 4.75% per annum and the date that interest begins to accrue. Interest will accrue from the date each sanction order was entered.[61] With these principals established, simple interest on the sanctions awarded is a mathematical calculation:

- Fourth Motion to Compel Order (Entered May 31, 2013, 1065 days between order and April 30, 2016): Total fees are $44,657.50 x 4.75% interest rate per annum for 1065 days ($5.81 per diem) = $6,187.65 in interest. Total with interest = $50,845.15

- Fifth Motion to Compel Order (Entered January 16, 2014, 835 days between order and April 30, 2016): Total fees are $59,975 x 4.75% interest rate per annum for 835 days ($7.80 per diem) = $6,513 in interest. Total with interest = $66,488.

- Omnibus Fraud Order (Entered August 1, 2014, 638 days between order and April 30, 2016): Total fees are $61,470 x 4.75% interest rate per annum for 638 days ($8.00 per diem) = $5,104 in interest. Total with interest = $66,574.

- CMO Violation Order (Entered October 3, 2013, 940 days between order and April 30, 2016): Total fees are $14,887.50 x 4.75% interest rate per annum for 940 days ($1.94 per diem) = $1,823.60 in interest. Total with interest = $16,711.10.

- 57.105 Order (Entered October 3, 2013, 940 days between April 30, 2016): Total fees are $19,600 x 4.75% interest rate per annum for 940 days ($2.55 per diem) = $2,397 interest. Total with interest = $21,997.

The total award, as of April 30, 2016, is $222,615.25.  Per diem interest calculated on the original sanctions awarded will continue to accrue on a simple, non-compounded rate of 4.75% in the

---

[60] Exhibit D-002(A).
[61] *Quality Engineered Installation, Inc. v. Higley S., Inc.*, 670 So. 2d 929, 930-31 (Fla. 1996).

amount of $28.97 per day starting on May 1, 2016, at least as to those Defendants responsible for the *total* award.

### *Liability of* <u>*Nilhan Financial, LLC and Orlando Gateway Partners, LLC*</u>

The next question is whether each individual Defendant is responsible for all or only a portion of the total award. The answer is yes; all Defendants are liable for the full award with two exceptions. Orlando Gateway Partners, LLC is not liable for the sanctions orders relating to its earlier bankruptcy case. Nilhan Financial, LLC is not liable for the sanctions assessed with the Omnibus Fraud Order.

Nilhan Financial contends it was not listed as a responsible party in two orders: the Fourth Motion to Compel Order and the Omnibus Fraud Order. As such, it argues it has no liability for sanctions awarded under these two orders. The Court agrees a party necessarily must be named as a wrongdoer either in the motion or order granting relief to be liable for damages awarded.[62]

Nilhan Financial was specifically included as a named Defendant in the state court's Fourth Motion to Compel Order and was directed to comply with all of its directives, with the possible exception of the directive in Paragraph 3(b). This one arguable exclusion does not allow Nilhan Financial to avoid all liability for the misconduct found by the state court on the Plaintiffs' Fourth Motion to Compel. Nilhan Financial remains liable for the damages awarded under this order.

As to the Omnibus Fraud Order, however, Plaintiffs did not seek any relief against Nilhan Financial, LLC in their motion. Nor did the state court include Nilhan Financial, LLC as a responsible party. Perhaps the Plaintiffs intended to include Nilhan Financial, LLC, but they failed

---

[62] *Sinatra v. Ikaros Aviation, Inc.*, 723 So. 2d 358, 359 (Fla. 3d Dist. Ct. App. 1998) ("[A]s to [one] defendant . . . an employee of the corporation, we reverse the final judgment and direct the reinstatement of his pleadings. This decision is required because, prior to the entry of the sanction order, no discovery order had been entered against him or violated by him.").

to do so. The result is that Nilhan Financial, LLC is **not** liable for the damages of $66,574 awarded under this order.

Nor is Orlando Gateway Partners, LLC responsible for sanctions awarded under the Case Management Order or the 57.105 Motion/Order that involved the non-debtor Defendants improper assertion of the automatic stay. Orlando Gateway Partners voluntarily filed its bankruptcy case and was entitled to rely on the automatic stay. It committed no wrong. Nor did the state court find any such abuse. So, Orlando Gateway Partners, LLC, now a Chapter 7 Debtor in its second bankruptcy filing, is not liable for the damages awarded under the CMO Order ($16,711.10.) or under the 57.105 Order ($21,997).

### *Defendants are Jointly and Severally Liable*

Defendants next argue that, because joint and several language is expressly used in *only* the Fifth Motion to Compel Order, they are not jointly and severally liable for the damages assessed under the other sanction orders. Defendants argue the Court should prorate the rest of the sanctions equally among each Defendant.

Florida Rule of Civil Procedure 1.380(a)(4) certainly allows a court to prorate expenses between responsible parties.[63] But, here, based on the convoluted record before me,[64] I easily conclude these Defendants were working jointly to defeat the Plaintiffs' legitimate efforts to get relevant discovery. No one party is disproportionately more responsible, or irresponsible, than another. They each deliberately engaged in discovery abuses, and each should bear the full

---

[63] *Shniderman v. Fitness Innovations & Techs., Inc.*, 994 So. 2d 508, 516-17 (Fla. 4th Dist. Ct. App. 2008).
[64] *See, e.g., Parton v. Palomino Lakes Prop. Owners Ass'n, Inc.*, 928 So. 2d 449, 454 (Fla. 2d Dist. Ct. App. 2006) ("The testimony at the fee hearing reflected that the fees could not be apportioned, and in fact, the order on fees and costs states, 'The court finds that it is impossible to allocate time between parties or respective counts.' Under these circumstances, we conclude that the [plaintiffs] are entitled to a fee award that is joint and several."). In *Parton*, the Court found that all defendants were subject to deed restrictions. *Id.* at 453-54. In this case, all named Defendants are subject to the State Court orders. The testimony (and lack thereof) at trial reflected it would be impossible to apportion the responsibility for the sanctionable conduct and, in turn, the fees assessed for that sanctionable conduct.

financial responsibility for their collective actions.  Defendants failed to present any evidence, much less convincing evidence at trial, to demonstrate which Defendant, if any, was more at fault than another.  Each Defendant is jointly and severally liable for the total sanctions awarded.

### *Conclusion*

Defendants are jointly and severally liable on the sanction orders in the total amount of $222,615.25 as of April 30, 2016, with the exception that Nilhan Financial, LLC is not liable for the damages of $66,574 arising from the Omnibus Fraud Order and Orlando Gateway Partners, LLC is not liable for under the CMO Order ($16,711.10) or under the 57.105 Motion/Order ($21,997).  Per diem interest calculated on the original sanctions awarded will continue to accrue on a simple, non-compounded rate of 4.75% in the amount of $28.97 per day starting on May 1, 2016, at least as to those Defendants responsible for the *total* award.  A separate order consistent with this Memorandum Opinion shall be entered.

###

Copies furnished to:

Attorney Clay Townsend, is directed to serve a copy of this order on interested parties who are non-CM/ECF users and file a proof of service within 3 days of entry of the order.